**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JOSE A. GONZALEZ BERMUDEZ,

**Plaintiff,**

**v.**

JOHN POTTER, POSTMASTER GENERAL, ET AL.

**Defendants.**

**CIVIL NO.** 08-1189 (FAB)

**OPINION & ORDER**

BESOSA, District Judge

Pending before the Court is defendants' motion for summary judgment. (Docket No. 29) Having considered the arguments contained in defendants' motion, plaintiff's opposition, and defendants' reply to the opposition, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment.

**DISCUSSION**

**I. Background**

**Procedural Background**

On October 12, 2004, plaintiff Jose Gonzalez-Bermudez requested an appointment with a Dispute Resolution Specialist from the United States Postal Service's Equal Employment Opportunity Office ("EEO Office"). (Docket No. 30-8 at 1) On October 23, 2004, plaintiff filled out a pre-complaint counseling form, in which he claimed that he was unlawfully discharged on the basis of disability, sex, nationality, and race. Id. at 2. On April 12,

2005, after the pre-complaint counseling process had been completed, plaintiff filed a formal Equal Employment Opportunity Commission ("EEOC") complaint. (Docket No. 30-11 at 1) After the conclusion of EEOC proceedings in defendants' favor, plaintiff filed the complaint in this case. (Docket No. 2)

On September 24, 2008, plaintiff filed an amended complaint alleging disparate treatment and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-15, and the Rehabilitation Act, 29 U.S.C. § 794, against the United States Postal Service ("Postal Service") and John E. Potter ("Potter"), in his capacity as the United States Postmaster General. (Docket No. 18 at ¶¶ 1, 7-8) On July 28, 2009, defendants filed a motion for summary judgment arguing that plaintiff's claims should be dismissed because: (1) plaintiff failed to exhaust administrative remedies with regard to any claims based on his initial discharge because he did not comply with an EEOC deadline; (2) plaintiff failed to establish a *prima facie* case of disparate treatment; (3) plaintiff failed to establish that he is "disabled" for the purposes of the Rehabilitation Act; (4) plaintiff cannot establish a causal connection sufficient to maintain a retaliation action; and (5) defendants have presented a legitimate nondiscriminatory reason for the actions taken against plaintiff. (Docket No. 29; Docket No. 31)

On September 2, 2009, plaintiff filed an opposition to the motion for summary judgment arguing that: (1) the relevant EEOC deadline should be equitably tolled; (2) his drug addiction constituted a "disability" for the purposes of the Rehabilitation Act; (3) there was a causal connection sufficient to establish a *prima facie* case of retaliation based on defendants' knowledge of his protected conduct and the temporal proximity between that conduct and an adverse employment action; and (4) defendants' nondiscriminatory reason for the actions taken against plaintiff is a pretext for disability discrimination. (Docket No. 36) On September 28, 2009, defendants filed a reply to plaintiff's opposition reiterating their argument that plaintiff was not "disabled" and responding that: (1) plaintiff had not established a basis for equitable tolling; and (2) there was no causal connection between plaintiff's protected conduct and any adverse employment action because defendants had no knowledge of protected conduct at the time of the actions taken against plaintiff. (Docket No. 46)

**Uncontested Facts**

Gonzalez-Bermudez is a former Postal Service employee. (Docket No. 30 at ¶ 1; Docket No. 36-2 at ¶ 1; Docket No. 30-4) He began his employment with the Postal Service on July 6, 2000, and continued in casual or transitional appointments until April 17, 2004. (Docket No. 30 at ¶ 2; Docket No. 36-2 at ¶ 2; Docket

No. 30-4; Docket No. 30-5) On February 25, 2004, plaintiff submitted an application for a part-time flexible letter carrier position with the Postal Service. (Docket No. 30 at ¶ 3; Docket No. 36-2 at ¶ 3; Docket No. 30-4) He was subsequently selected for the position of City Carrier, PS-05, PTF, at the Post Office in Lajas, Puerto Rico. (Docket No. 30 at ¶ 4; Docket No. 36-2 at ¶ 4; Docket No. 30-5) During this employment, plaintiff's supervisor was Radames Millayes ("Millayes"), the Acting Postmaster of the Lajas, Puerto Rico Post Office. (Docket No. 30 at ¶ 6; Docket No. 36-2 at ¶ 6; Docket No. 30-6)

Plaintiff's February 25, 2004, application contained a question labeled "Question 7a", which asked, "Have you ever been convicted of a crime or are you now under charges for any offense against the Law?" (Docket No. 30 at ¶ 7-8; Docket No. 36-2 at ¶ 7-8; Docket No. 30-4 at 5) Question 7a also indicated, however, that an applicant may omit "any conviction that has been set aside, vacated, annulled, expunged, or sealed . . . ." Id. Plaintiff's response to Question 7a was "no." (Docket No. 30 at ¶ 9; Docket No. 36-2 at ¶ 9; Docket No. 30-4 at 5)

On July 13, 2004, Postal Inspector M.T. Kmetz ("Kmetz") completed an investigative memorandum stating that he conducted an inquiry in the Puerto Rico Criminal Record System regarding plaintiff. (Docket No. 30 at ¶¶ 12-17; Docket No. 36-2 at ¶¶ 7-8; Docket No. 30-7 at 2) The memorandum further states that this

inquiry uncovered an April 7, 1998, criminal conviction for "two counts of criminal possession a controlled substance [sic]." Id. The memorandum also indicates that plaintiff was interviewed by Kmetz regarding the results of inquiry. Id.

On the same day that the investigative memorandum was issued, Millayes sent a letter of separation to plaintiff. (Docket No. 30 at ¶ 21; Docket No. 36-2 at ¶ 21; Docket No. 30-6) After informing plaintiff of the termination of his employment, the letter repeats the information stated in the investigative memorandum regarding plaintiff's criminal record and notes that he answered "no" to Question 7a on his February 15, 2004, employment application. (Docket No. 30 at ¶¶ 21, 23-27; Docket No. 36-2 at ¶¶ 21, 23-27; Docket No. 30-6) The letter concludes that plaintiff provided a false statement in that employment application by answering "no" to question 7a. Id. At the time plaintiff's employment was terminated, he was at the end of a 90-day probationary period as a part-time flexible letter carrier. (Docket No. 30 at ¶ 28; Docket No. 36-2 at ¶ 28; Docket No. 30-3)

In October of 2004, plaintiff reapplied for employment with the Postal Service. (Docket No. 30 at ¶ 29; Docket No. 36-2 at ¶ 29; Docket No. 30-9) Following this application, plaintiff received a letter from the Postal Service indicating that, at that time, it would only be hiring "Christmas Casual" employees. (Docket No. 30 at ¶ 30; Docket No. 36-2 at ¶ 30; Docket No. 30-9)

The letter stated that this position entailed 21 days of work at a rate of $8.00 per hour without benefits. Id. The letter instructed plaintiff report to the General Post Office located at 585 F.D. Roosevelt Ave., San Juan, Puerto Rico at 10:00 a.m. Id.

Plaintiff reported to the General Post Office at the designated time. (Docket No. 30 at ¶ 31; Docket No. 36-2 at ¶ 31; Docket No. 30-10) Ana Rosa, a Postal Service Human Resources Specialist, recognized plaintiff and reported his presence as an applicant for a "Christmas Casual" position to Carmen Rosa, the Personnel Manager at the General Post Office. (Docket No. 30 at ¶¶ 32-33; Docket No. 36-2 at ¶¶ 32-33; Docket No. 30-10) Ana Rosa then asked plaintiff to meet with Carmen Rosa in Carmen Rosa's office. (Docket No. 30 at ¶ 34; Docket No. 36-2 at ¶ 34; Docket No. 30-10) Plaintiff was not hired for the "Christmas Casual" position, nor has he been rehired by the Postal Service for any other position at any time after his July 13, 2004, termination. (Docket No. 30 at ¶¶ 36-37; Docket No. 36-2 at ¶¶ 36-37)

## II. Legal Analysis

### A. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is

insufficient to defeat a properly supported motion for summary judgment. Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**B. Exhaustion of Administrative Remedies**

Defendants argue that plaintiff failed to exhaust administrative remedies with regard to discrimination claims based on his discharge because he failed to comply with an EEOC deadline. (Docket No. 31 at 4-5) Any federal employee "who believe[s] [he or she has] been discriminated against on the basis of race, color, religion, sex, national origin, age, or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). This contact must occur "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action,

within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to comply with this deadline precludes a separate civil action based on that alleged discriminatory matter. See Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000); Roman-Martinez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996).

This deadline must be extended where, among other situations, "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2). Aside from these specific grounds for extension, the doctrine of equitable tolling may apply where a plaintiff has failed to comply with any EEOC deadlines. Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 n.6 (1st Cir. 2005). A plaintiff can be charged with constructive notice of his or her rights and timing requirements where an employer has complied with its statutory duty to display EEOC posters containing such information in conspicuous locations. See Mercado, 410 F.3d at 48-49; Johnson v. Runyon, 47 F.3d 911, 918 (7th Cir. 1995).

Although equitable tolling may be available, the record in this case and the clear language of the applicable regulations obviate consideration of that doctrine at the present time. Plaintiff concedes that he failed to contact a Postal Service EEO Counselor within 45 days of his discharge. He has, however, submitted a sworn statement that he was not notified of any EEOC time limits at the time of his discharge and did not become aware

of the possibility of filing a discrimination complaint until August or September of 2004. (Docket No. 36-5 at ¶¶ 3-5) Furthermore, plaintiff avers in his sworn statement that he never saw an EEOC poster during his employment with the Postal Service. See id. at ¶ 2.

Defendants attempt to counter the evidence submitted by plaintiff with an affidavit from an EEOC investigator. In this affidavit, the EEOC investigator states that she observed a copy of EEOC Poster 72 on display at the postal facility where plaintiff was employed on April 9, 2005. (Docket No. 46-2 at ¶ 6) This poster contained "information concerning the categories protected from discrimination and the general procedures for filing a complaint with the Postal Service EEO office." Id. at ¶ 7.

It is clear from the record, however, that plaintiff's employment with the post office, his discharge from that employment, his attempt to re-apply for that employment, and his initial contact with the Postal Service's EEO office occurred prior to the year 2005. (See Docket Nos. 30-4, 30-5, 30-6, 30-9, and 30-10) Defendants have provided no evidence of EEOC posters in place at the time of plaintiff's employment with the United States Postal Service. Thus, the court has been provided with no basis to conclude that plaintiff had either actual or constructive notice of the 45-day time limit. Given plaintiff's evidence regarding his unawareness of the applicable time limits and the lack of any

evidence in the record suggesting that plaintiff had notice of those time limits, the Court cannot conclude, at this stage of the proceedings, that plaintiff has failed to exhaust administrative remedies with regard to claims based on his initial discharge from the Postal service.

**C. Plaintiff's *Prima Facie* Case of Disparate Treatment**

The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any . . . activity conducted by . . . the United States Postal Service." 29 U.S.C. 794(a). When a plaintiff alleges employment discrimination, the Rehabilitation Act is governed by the same "standards applied under title I of the Americans with Disabilities Act of 1990 . . . and the provisions of sections 501 through 504, and 510, of the [same], as such sections relate to employment." See 29 U.S.C. § 794(d); Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008). The Americans with Disabilities Act ("ADA") prohibits discrimination against an otherwise qualified individual based on his or her disability in all employment practices, including job application procedures, hiring, firing, advancement and compensation. 42 U.S.C. § 12112(a). Title VII of the Civil Rights Act of 1964 prohibits the same type of discrimination "because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. 2000e-2(a)(1). To prove the motive for the adverse employment decision in a case of disparate treatment under Title VII or the Rehabilitation Act, a plaintiff can rely on direct evidence of discrimination, or proceed under the McDonnell Douglas burden shifting regime. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Marcano-Rivera v. Pueblo Int'l., 232 F.3d 245, 251 (1st Cir. 2000); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252 (1st Cir. 1999).

In this case, plaintiff has presented no direct evidence of discriminatory animus. He must therefore rely on the McDonnell Douglas burden shifting regime. To establish a *prima facie* case under the McDonnell Douglas burden shifting regime, a plaintiff must show that: "(1) he is a member of the protected class; (2) he was qualified for the position he sought [or the position which he occupied]; (3) he was subjected to adverse employment action; and (4) the position remained open or was filled by someone else with similar qualifications." See Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003)).

Defendants argue that plaintiff has failed to satisfy the fourth prong of the McDonnell Douglas *prima facie* case. (Docket

No. 31 at 6)[1] The purpose of the fourth prong of the McDonnell Douglas burden shifting regime is to establish that an employer had a continued need for the employee or applicant's services. See Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 59 (1st Cir. 2005) (citing Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 760 (1st Cir. 2005)). Plaintiff has provided no evidence as to any such need. Plaintiffs answers to interrogatories, declaration, affidavits, and sworn statement provide no indication as to what happened to either the position from which he was discharged or the position for which he later applied. Given this complete lack of evidence, plaintiff has failed to satisfy the fourth prong of the McDonnell Douglas burden shifting regime. See Webber v. Int'l Paper Co., 417 F.3d 229, 234-35 (1st Cir. 2005).

Although the McDonnell Douglas *prima facie* case is not meant to be an onerous burden, plaintiff has failed to submit sufficient evidence to carry it. In order to establish a *prima facie* case under the McDonnell Douglas burden shifting regime, "the

[1] Defendants challenge plaintiff's *prima facie* case and state that "[p]laintiff has failed to provide evidence of any comparator who was treated more favorably than he was." (Docket No. 31 at 6) Defendants cite an incorrect standard, however, mistakenly referring to a method of proving the pretextual nature of an employer's nondiscriminatory reason for taking an adverse employment action. Although defendants use the wrong standard, the Court reads defendants' argument as challenging the fourth prong of plaintiff's *prima facie* case regarding other employees or applicants with similar qualifications.

plaintiff must prove by a preponderance of the evidence that [he] applied for an unavailable position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990) (citing Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). By failing to satisfy the fourth prong of his *prima facie* case, plaintiff has not provided the Court with sufficient evidence to find any such inference of unlawful discrimination. Accordingly, plaintiff's Title VII and Rehabilitation Act disparate treatment claims cannot survive summary judgment and are **DISMISSED.**[2]

**D. Retaliation Claims**

The Rehabilitation Act prohibits retaliation under the same standard as the ADA. See 29 U.S.C. 794(d); Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006). The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Title VII provides similar protection. See 42 U.S.C. § 2000-e3.

[2] Having found that plaintiff failed to satisfy the fourth prong of a *prima facie* case of disability discrimination under the Rehabilitation Act, it is unnecessary to consider defendants' argument that plaintiff's drug addiction does not constitute a "disability" under the Rehabilitation Act.

Courts have used the Title VII retaliation framework when analyzing a retaliation claim under the ADA. See, e.g., Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006). For a *prima facie* case of retaliation "a plaintiff must establish that (1) [he or she] engaged in protected conduct; (2) [he or she] experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerezo, 355 F.3d at 25 (citing Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002)). Once a plaintiff satisfies the elements of a *prima facie* case of retaliation, a burden of production falls on the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. Ramirez Rodriguez, 425 F.3d at 84; Valentin-Almeyda, 447 F.3d at 95. The ultimate burden of persuasion, however, remains with the plaintiff and he or she must show that the employer's nondiscriminatory reason is a pretext for retaliatory discrimination. Id.

***Prima Facie* Case**

Defendants argue that plaintiff cannot establish causation because he has failed to submit any evidence demonstrating that the Postal Service had knowledge of any protected conduct on his part. (Docket No. 31 at 8-9; Docket No. 46 at 7-9) A plaintiff must show a causal connection between his or her protected conduct and the adverse employment action. Ramirez Rodriguez, 425 F.3d at 84.

Close temporal proximity between two events may give rise to an inference of causal connection. See Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004). Mere temporal proximity between an employer's knowledge of protected conduct and an adverse action may establish causation if the temporal proximity is "very close." Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)). For example, in Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004), the First Circuit concluded that a one month interval was sufficient to satisfy the causal connection prong of the *prima facie* case. In determining whether causation exists, however, courts "should consider the actions taken against the employee within the overall context and sequence of events[,] the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision makers." Vargas v. Puerto Rican-American Ins. Co., 52 F.Supp.2d 305, 313-14 (D.P.R. 1999).

With regard to plaintiff's discharge on July 13, 2004, defendants are correct that there is no basis for a retaliation claim under the Rehabilitation Act. There is no evidence in the record that plaintiff engaged in any protected conduct prior to his initial discharge from the Postal Service. Therefore, any retaliation claim based on plaintiff's discharge is **DISMISSED WITH PREJUDICE.**

There appears to be a genuine issue of material fact, however, with regard to the defendants' knowledge of plaintiff's contact with the Postal Service's EEO Office on October 12, 2004, prior to the decision to not rehire him on October 19, 2004. Defendants submit an affidavit from Ana Rosa, stating that Carmen Rosa told plaintiff that he was not eligible for the "Christmas Casual" position due to his prior falsification on an employment application. (Docket No. 30-16 at 10) Plaintiff submits a sworn statement that when he spoke with Carmen Rosa at the General Post Office, she told him that he could not be hired until his EEOC complaint was resolved. (Docket No. 36-4 at ¶ 7) Defendants challenge plaintiff's sworn statement by referencing an earlier affidavit completed by plaintiff in the course of the EEOC proceedings that does not mention any reference to EEOC activity by Carmen Rosa. (Docket No. 46 at 8) Although it makes no mention of that reference, the earlier affidavit does not necessarily contradict plaintiff's sworn statement. Given that plaintiff has submitted some evidence that Carmen Rosa mentioned his EEOC activity the week prior to the Postal Service's decision against hiring plaintiff for the "Christmas Casual" position, the Court cannot grant summary judgment for failure to establish a *prima facie* case of retaliation with regard to the Postal Service's denial of his application for the "Christmas Casual" position.

**Defendants' Nondiscriminatory Reason**

Defendants argue that it has a legitimate, nondiscriminatory reason for its decision not to hire plaintiff for the "Christmas Casual" position. (Docket No. 31 at 9) They claim that plaintiff was not hired because he had previously lied on a Postal Service employment application regarding his criminal history by answering "no" to Question 7a. Id. at 9-10. Given that defendants have articulated a nondiscriminatory reason for its actions, the burden is on plaintiff to establish that their stated reason is pretext for discrimination. Ramirez Rodriguez, 425 F.3d at 84. A plaintiff may "establish pretext by showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" See Santiago-Ramos, 217 F.3d at 56 (citing Hodgens v. General Dynamics, Corp., 144 F.3d 151, 168 (1st Cir. 1998)).

In the present case, it is clear from the record that a Postal Service applicant answering Question 7a may omit "any conviction that has been set aside, vacated, annulled, expunged, or sealed . . . ." (Docket No. 30 at ¶ 7-8; Docket No. 36-2 at ¶ 7-8; Docket No. 30-4 at 5) Plaintiff has presented evidence, including decisions of the Puerto Rico Court of First Instance, that the criminal charges uncovered by Kmetz's inquiry in the Puerto Rico

Criminal Record System were set aside as a result of his successful completion of a drug rehabilitation program. (See Docket No. 36-4 at ¶ 6; Docket No. 36-12; Docket No. 36-13) Thus, there is significant question as to whether plaintiff actually lied on his employment application.

Defendants argue that even if plaintiff did answer Question 7a honestly, they had a legitimate, good faith belief that he had falsified his employment application based on Kmetz's inquiry in the Puerto Rico Criminal Record System. (Docket No. 46 at 11-12) Plaintiff's sworn statement, however, indicates that he informed Postal Service investigators of the circumstances of his criminal record prior to any adverse employment action taken against him, thus undermining the basis for a good faith belief that plaintiff had not answered Question 7a truthfully. (See Docket No. 36-4 at ¶ 6) Considering the evidence presented by plaintiff highlighting weaknesses in defendants' nondiscriminatory reason for the allegedly retaliatory actions, there remain genuine issues of material fact with regard to the pretextual nature of that reason.

**CONCLUSION**

For the reasons expressed above, defendants' motion for summary judgment (Docket No. 29) is **GRANTED** as to plaintiff's disparate treatment claims under Title VII and the Rehabilitation Act and plaintiff's retaliation claim based on his discharge from the Postal Service. These claims are **DISMISSED WITH PREJUDICE.**

The motion for summary judgment is **DENIED** as to plaintiff's retaliation claim based on the decision to deny his application for the "Christmas Casual" position.

The Jury Trial in this case remains scheduled to commence on January 11, 2010.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, December 23, 2009.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE